**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADAPTIVE AVENUE ASSOCIATES, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 25-483-GBW |
| EBAY INC., | |
| Defendant. | |

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Devan V. Padmanabhan, Michelle E. Dawson, PADMANABHAN & DAWSON, P.L.L.C., Minneapolis, MN.

*Counsel for Plaintiff Adaptive Avenue Associates, Inc.*

Benjamin J. Schladweiler, GREENBERG TRAURIG, LLP, Wilmington, DE; Joshua L. Raskin, Brian J. Prew, Kathryn E. Albanese, Iveth Villatoro, GREENBERG TRAURIG, LLP, New York, NY.

*Counsel for Defendant eBay, Inc.*

**<u>MEMORANDUM OPINION</u>**

July 22, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendant eBay Inc.'s ("Defendant" or "eBay") Motion to Dismiss Plaintiff Adaptive Avenue Associates, Inc.'s ("Plaintiff" or "Adaptive") First Amended Complaint for Failure to State a Claim ("eBay's Motion") (D.I. 20), which has been fully briefed (D.I. 21; D.I. 22; D.I. 24). For the reasons set forth below, the Court grants eBay's Motion.

## I.    BACKGROUND

The following are factual allegations from Adaptive's First Amended Complaint (D.I. 18) and are taken as true for the purpose of resolving eBay's Motion.

Mr. Quimby is the founder, major shareholder, and CEO of Adaptive. D.I. 18 ¶ 16. He is also the sole inventor listed on U.S. Patent Nos. 7,171,629 ("'629 Patent") and 7,428,707 ("'707 Patent") (together, "Asserted Patents"). *Id.* Adaptive is the assignee of all right, title, and interest in the Asserted Patents. D.I. 18 ¶¶ 9, 14. The '629 Patent "describes a system and method to crate and display a presentation." *Id.* ¶ 10 (citing '629 Patent at 7:30-35, 8:5-14). The '707 Patent describes a "system and method to enable multiple types of automated navigation through a plurality of website addresses." *Id.* ¶ 15 (citing '707 Patent at 1:24-28).

On April 21, 2025, Adaptive initiated this action against eBay, alleging infringement of the Asserted Patents. Adaptive filed the operative First Amended Complaint ("FAC") on July 28, 2025. *See generally id.* Adaptive alleges that eBay infringes the '629 Patent by "using the infringing method for customizing access to a plurality of websites using www.ebay.com." *Id.* ¶ 50. Adaptive further alleges that eBay infringes the '707 Patent by "making, using, offer[ing] for sale, and[/]or selling products using the infringing method for auto-composing a website using www.ebay.com." *Id.* ¶ 68. On August 11, 2025, eBay moved to dismiss Adaptive's FAC pursuant

2

to Federal Rule of Civil Procedure 12(b)(6), contending that the asserted claims of the Asserted Patents are directed to ineligible subject matter under 35 U.S.C. § 101. *See generally* D.I. 21.

## A.    The '629 Patent

The '629 Patent is generally directed to "[a] customizable web site access system . . . comprised of a software program incorporating both a composing portion and a performing portion." '629 Patent at Abstract. The '629 Patent has thirty-six (36) claims. *See generally id.* at Claims. The FAC alleges that eBay infringes the '629 Patent "literally and/or under the doctrine of equivalents," D.I. 18 at 25, "including but not limited to at least claim 11." *Id.* ¶ 50. Claim 11 is an independent method claim, which recites:

> 11. A method for customizing access to a plurality of web sites, said method comprising the steps of:
>
> remotely invoking a composer operating on a host server;
>
> creating a presentation in said composer, wherein said step of creating comprises the steps of:
>
>> establishing a list of URLs in said composer by one of a plurality of list establishment methodologies the plurality of list establishment methodologies comprising manual entry via a user interface portion of the composer and automatic entry by a query-based system;
>>
>>> determining a display sequence of said list of URLs in said composer;
>>>
>>> determining a duration of display for said list of URLs in said composer;
>
> remotely invoking a performer operating on said host server to present said created presentation; and
>
> automatically locally displaying the created presentation presented by said performer in a slide show format according to said list and said display sequence, wherein each of said plurality of URLs comprises a slide within said created presentation, and wherein each slide is automatically displayed to a user, absent

3

human intervention, for the pre-determined display duration as at least a portion of a web page.

'629 Patent at Claim 11.

### B.    The '707 Patent

The '707 Patent is generally directed to "[a] web site access system compris[ing] an auto composer including the components of a composer and performer." '707 Patent at Abstract. The '707 Patent has eleven (11) claims. *See generally id.* at Claims. The FAC alleges that eBay infringes the '707 Patent "literally and/or under the doctrine of equivalents," D.I. 18 at 25, "including but not limited to at least claims 1 and 7." *Id.* ¶ 50. Claim 1 is an independent system claim, which recites:

> 1. A computer-implemented auto-composing web site access system, comprising;
>
> a composer, wherein said composer composes a web slide show presentation through automatic extraction of web page details from a desired web page, wherein said web page details include one or more of the following: a plurality of hyperlinks found within the desired web page that provides a plurality of URLs, a presentation/rendition text file within the desired web page that provides a plurality of URLs, a meta tag within the desired web page that provides a plurality of URLs; and
>
> a performer, wherein said performer displays said web slide show presentation in order of the plurality of URLs provided by the extracted web page details.

'707 Patent at Claim 1. Claim 7 is an independent method claim, which recites:

> 7. A computer implemented method for auto composing a web site, the method comprising the steps of:
>
> composing a presentation for a desired web page by creating a list of URLs, wherein said step of composing comprises one or more of the following:
>
>> automatically extracting a plurality of hyperlinks from said desired web page, wherein said plurality of hyperlinks provide said URLs;

4

> automatically extracting a presentation/rendition text file from said desired web page, wherein the text file provides said URLs; and
>
> automatically extracting a meta tag from the desired web page, wherein said meta tag provides said URLs; and
>
> automatically displaying said presentation, wherein said presentation is presented in order of the created list of URLs.

'707 Patent at Claim 7.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

"To state a viable claim, a plaintiff must offer a short and plain statement showing that he is entitled to relief, including 'allegations plausibly suggesting (not merely consistent with)' such entitlement." *Bah v. United States*, 91 F.4th 116, 119 (3d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must set forth enough facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A]t the motion-to-dismiss stage, the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678-79). "In ruling on a motion to dismiss," a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]he primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the

5

complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023). In other words, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

### B.    Patent-Eligible Subject Matter

§ 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more, thereby 'transforming' them into a patent-eligible invention." *Id.* at 217 (cleaned up). "The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection." *Id.* (internal citation omitted). "The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.*

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Id.* In other words, the inquiry is whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Id.* If "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an

6

ordered combination" to determine if there is an "inventive concept – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). To avoid invalidity, the additional features cannot simply be well-understood, routine, conventional activities previously known to the industry. *Id.* at 225. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "Contesting patent eligibility under § 101 is an affirmative defense of invalidity, and the burden of proving invalidity falls squarely upon . . . the movant." *Aon Re, Inc. v. Zesty.AI, Inc.*, 791 F. Supp. 3d 531, 537 (D. Del. 2025) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015); 35 U.S.C. § 282(a)).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. A § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to patent-eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd.*

7

*v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016))); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). The Federal Circuit "ha[s] repeatedly recognized, 'it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.'" *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1289-90 (Fed. Cir. 2024) (quoting *Genetic Techs. Ltd.*, 818 F.3d at 1373). "If patent eligibility is challenged in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), we must apply the well-settled Rule 12(b)(6) standard which is consistently applied in every area of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.* (*Aatrix I*), 890 F.3d 1354, 1357 (Fed. Cir. 2018). "[P]atent eligibility [under § 101] can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (some alterations in original) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.* (*Aatrix II*), 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## III.    DISCUSSION

### A.    Claim 11 of the '629 Patent Is Representative of Claims 1 and 7 of the '707 Patent

First, the Court decides whether Claim 11 of the '629 Patent is representative of Claims 1 and 7 of the '707 Patent for purposes of the § 101 analysis. Courts may treat a claim as representative if "all of the challenged claims relate to the same abstract idea" and none of the other "claims add one or more inventive concepts that would result in patent eligibility." *Cronos Techs., LLC v. Expedia, Inc.*, C.A. No. 13-1538-LPS, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (explaining that courts treat a claim as representative if it is "substantially similar and linked to the same abstract idea" as another claim); *Two-Way Media Ltd.*

8

*v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (treating a single claim as representative of all claims in both asserted patents). "Courts may [also] treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Courts have declined to rule on a § 101 motion to dismiss when the accused infringer failed to meet its burden to show that its choice of representative claim is proper. *Id.* at *3-4.

In the instant action, the parties dispute whether Claim 11 of the '629 Patent is representative of Claims 1 and 7 of the '707 Patent. Adaptive contends that Claim 11 of the '629 Patent is not representative. Adaptive reasons that, "whereas claim 11 [of the '629 Patent] is 'customizing access to a plurality of websites,' claim 1 [of the '707 Patent] is a 'computer-implemented auto-composing web site access system,' and claim 7 [of the '707 Patent] is a 'method for auto composing a website.'" D.I. 22 at 10. Further, Adaptive notes that "claim 11 [of the '629 Patent] requires a composer and performer, which is not required by claim 7 [of the '707 Patent]." *Id.* eBay, on the other hand, maintains that the asserted claims of the Asserted Patents all consist of: "(1) composing a presentation; (2) collecting a list of URLs to display; (3) setting temporal constraints, such as the sequence and duration of the display of each URL; and (4) automatically displaying the presentation according to the previously defined sequence and duration information." D.I. 21 at 8.

The Court agrees with eBay that Claim 11 of the '629 Patent is representative of Claims 1 and 7 of the '707 Patent. *First*, all of the asserted claims are generally directed to a customized web site access system, or a method of creating the same. *See generally* '629 Patent at Claims;

9

'707 Patent at Claims; *see also* D.I. 18 ¶ 46 ("In many respects, the '707 Patent is concerned with solving the same technological problems with the Web as the '629 Patent."). While the limitations in each asserted claim differ slightly, at their core, they all involve the creation of a presentation of web pages from an ordered list of URLs, and the display of said presentation in a specific sequence. *See* '629 Patent at Claim 11; '707 Patent at Claims 1, 7. Moreover, although Claim 7 of the '707 Patent does not specifically require a "composer" or a "performer," the methods detailed in Claim 11 of the '629 Patent and Claim 7 of the '707 Patent perform substantially the same function (i.e., composing and performing a slide show presentation). Thus, all the asserted claims of the Asserted Patents are substantially similar and linked to the same abstract idea.

*Second*, the only claim limitation in the '707 Patent that Adaptive argues adds an inventive concept absent from the '629 Patent is "automatic extraction." D.I. 22 at 10. However, Adaptive fails to provide "meaningful argument for the distinctive significance" of automatic extraction from the method described in Claim 11 of the '629 Patent. *See Berkheimer*, 881 F.3d at 1365. Nor does Adaptive refute eBay's argument that the "extracting" steps in the '707 Patent "are subsumed within the 'composing' step" of the asserted claims in the '707 Patent, a step which is also present in Claim 11 of the '629 Patent. *See* D.I. 21 at 9; *see generally* D.I. 22 at 10-11 (not discussing). Adaptive only relies on its FAC for the notion that the patent examiner's allowance of the claims of the '707 Patent was based on the automatic extraction limitation. Without a meaningful analysis of the specific distinctiveness of automatic extraction from the "composing" method in the '629 Patent, the Court cannot distinguish the two Asserted Patents on that basis.

Given that all the asserted claims in the Asserted Patents are substantially similar, and that Adaptive has not demonstrated that automatic extraction is an inventive concept that warrants

10

separate analysis of the two Asserted Patents, the Court will treat Claim 11 of the '629 Patent as representative of Claims 1 and 7 of the '707 Patent.

**B.      Claim 11 of the '629 Patent Is Not Directed to Patent-Eligible Subject Matter**

Although the Court finds that Claim 11 of the '629 Patent is representative, the Court will analyze the eligibility of the '629 Patent and '707 Patent separately, for the sake of providing a comprehensive analysis.

**1.      Claim 11 of the '629 Patent Is Directed to an Abstract Idea**

The Court first analyzes whether Adaptive has plausibly alleged that Claim 11 of the '629 Patent is directed to patent-eligible subject matter under *Alice* step one. At *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F. 3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F. 3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). "In addition to the claim language itself, [the Court] may also examine the patent's specification to determine the meaning of the claims as a whole." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F. 4th 1359, 1367 (Fed. Cir. 2024). Courts have also found it helpful "to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

eBay contends that Claim 11 of the '629 Patent is "directed to the abstract idea of collecting, organizing, and sequentially displaying information." D.I. 21 at 9. In eBay's view, Claim 11 "describes the same steps for collecting and displaying content as a slide show using well-known, generic techniques" including "collecting a list of website URLs to display, determining temporal constraints such as the display sequence and/or duration for each URL, and

11

presenting the URLs in accordance with these constraints." *Id.* at 9-10. eBay likens the '629 Patent to *Interval Licensing LLC v. AOL, Inc.*, where the Federal Circuit found that recitation of "the collection, organization, and display of two sets of information on a generic display device [was] abstract absent a 'specific improvement to the way computers [or other technologies] operate.'" 896 F.3d 1335, 1345 (Fed. Cir. 2018) (second alteration in original) (quoting *Enfish*, 822 F.3d at 1336). eBay also points to *Robocast, Inc. v. Netflix, Inc.*, where a court in this District found that claims "directed to first creating a playlist of content and then organizing and displaying that content in an 'organized arrangement' for a user-adjusted duration were directed to an abstract idea." D.I. 21 at 11 (quoting *Robocast, Inc. v. Netflix, Inc.*, 767 F. Supp. 3d 138, 142 (D. Del. 2025)).

Adaptive responds that Claim 11 of the '629 Patent is directed to the patent-eligible specialized technology of "customizing access to a plurality of web pages using unconventional components (composer and performer) at unconventional locations (operating on a web server and not only on a user's computer), resulting in an improvement in computer functionality." D.I. 22 at 13. The '629 Patent, Adaptive contends, "includes limitations that improve computer technology." D.I. 22 at 14. Adaptive compares the claims to *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018). *See* D.I. 22 at 15. Adaptive explains that, just as the claims in *Data Engine* "solved the known problem of requiring users to 'search through complex menu systems' by providing 'a highly intuitive, user-friendly interface with familiar notebook tabs,'" Claim 11 of the '629 Patent solved the problem of "requiring web users to make repeated server requests for each webpage by providing an automated delivery architecture that does not require repeated server requests to show the entire presentation of multiple web pages." *Id.* (quoting *Data Engine*, 906 F.3d at 1008). Adaptive also likens the '629 Patent to *Core Wireless v. LG Elecs.*,

*Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), where the Federal Circuit found claims "directed to a particular manner of summarizing and presenting information in electronic devices" patent-eligible. D.I. 22 at 15 (quoting *Core Wireless*, 880 F.3d at 1362).

The Court agrees with eBay and finds that the '629 Patent is directed to an abstract idea that resembles collecting, organizing, and sequentially displaying information. Adaptive has plausibly alleged that the methods described in the '629 Patent were generally innovative. As Adaptive explains, prior to the '629 Patent, users of the World Wide Web had to access "a single-source, static destination, e.g., a single web site address, and navigat[e] vertically through multiple pages at a single destination by selecting navigational links within a web page." '629 Patent at 7:50-53; *see also* D.I. 22 at 3 (citing D.I. 18 ¶¶ 23-27). The '629 Patent improved on this inefficient navigation by providing a system and method for creating a customized, automated presentation which allowed users to view "web sites in an automated, sequential fashion without returning continuously to the original search engine results list." '629 Patent at 9:8-10; *see also* D.I. 22 at 3 (citing D.I. 18 ¶¶ 31-32). Nevertheless, the fact that "the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' . . . is not enough for [patent] eligibility." *SAP Am., Inc.*, 898 F.3d at 1163 (alteration in original) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013)). The '629 Patent must actually improve the functionality of the computer itself. *Enfish*, 822 F.3d at 1335. To that end, Adaptive's FAC and Opposition Brief do not articulate how the '629 Patent fixes any problem in computer functionality, as opposed to simply automating a human inefficiency in navigating web pages. *See Surgetech, LLC v. Uber Techs. Inc.*, 700 F. Supp. 3d 179, 185 (D. Del. 2023), *aff'd sub nom. Surgetech M LLC v. Uber Techs., Inc.*, No. 2024-1280, 2025 WL 1621648 (Fed. Cir. June 9, 2025) (finding patents that "do not cite to a technological problem, but one of human inefficiency that

13

could be solved by automation" to be patent-ineligible); *see also Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022) ("[T]he automation of [a] conventional human process to make it more efficient is itself an abstract idea."). If anything, Adaptive's Opposition Brief confirms that the '629 Patent's innovativeness lies in its improvement of the user experience via "efficiently providing web content to [users]" and "retaining web users' attention." D.I. 22 at 3-4. An idea that merely improves the user experience is not patent-eligible. *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) ("[I]mproving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality.").

The Court finds *Interval Licensing* and *Robocast* particularly instructive. In *Interval Licensing*, the Federal Circuit found that the claims were focused on "collecting a second data set or controlling the order and timing of when to display the collected second data set, not for *how* to engineer or program the display of the second data set." 896 F.3d at 1345 (emphasis in original). These limitations did not "improve a computer as a tool, but merely recite[d] routine and conventional steps in carrying out the well-established practice of accessing data from an external source and displaying that data on a user's device." *Id.* In *Robocast*, the court found claims directed to "organizing and displaying playlists of content" patent-ineligible, and explained that none of the claims "contain[ed] any specificity as to how to accomplish the tasks of generating a playlist of content, accessing content . . . , organizing and displaying content . . . , or permitting the user to adjust the duration of the display of content." 767 F. Supp. 3d at 141-42.

The '629 Patent in the present action is analogous. Claim 11 of the '629 Patent details steps such as "invoking a composer," "creating a presentation," "establishing a list of URLs,"

"determining a display sequence," "determining a duration of display," "invoking a performer," and "automatically locally displaying the created presentation." *See* '629 Patent at Claim 11; *see also id.* at 8:62-11:67 (describing generally how to practice the method), 9:17-29 (describing how the composer and performer are invoked), 10:4-11:39 (describing the process of inputting information into the composer and performer), Figs. 2A & B (flow chart depictions of composer and performer). All of these claim limitations, and the specification's descriptions thereof, focus on the result-oriented method of collecting URLs and controlling how the corresponding web pages are presented, not on how to program or engineer the underlying technology. *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more."); *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (patents that "do not claim a particular way of programming or designing the software . . . , but instead merely claim the resulting systems" are directed to an abstract idea); *see also Internet Pats. Corp.*, 790 F.3d at 1348 (patent that did not describe the "mechanism" in the specification was directed to an abstract idea). That method is akin to the collection, organization, and display of information found to be an abstract idea in *Interval Licensing* and *Robocast.*

Adaptive's reliance on *Core Wireless* and *Data Engine*, on the other hand, is inapposite. In *Core Wireless*, the Federal Circuit analyzed the eligibility of patents directed to improving display interfaces on electronic devices, which would "allow a user to more quickly access desired data stored in, and functions of applications included in, the electronic devices." 880 F.3d at 1359. The Federal Circuit found those claims patent-eligible because they were "directed to a particular manner of summarizing and presenting information in electronic devices," which resulted in "an

improved user interface for electronic devices." *Id.* at 1362-63. In *Data Engine*, the Federal Circuit analyzed the eligibility of patents which claimed "systems and methods for making complex electronic spreadsheets more accessible by providing familiar, user-friendly interface objects—specifically, notebook tabs—to navigate through spreadsheets while circumventing the arduous process of searching for, memorizing, and entering complex commands." 906 F.3d at 1002. The court found that the representative claim in *Data Engine* was "not simply directed to displaying a graphical user interface or collecting, manipulating, or organizing information to improve navigation." *Id.* at 1010. Rather, the claim "recite[d] a specific structure (i.e., notebook tabs) within a particular spreadsheet display that perform[ed] a specific function (i.e., navigating within a three-dimensional spreadsheet)." *Id.* at 1011.

In both *Core Wireless* and *Data Engine*, the patent claims improved the device or interface's technical functionality. As for *Core Wireless*, the claim limitations disclosed a "specific manner of displaying a limited set of information to the user," which involved "restrain[ing] the type of data that can be displayed in the summary window" and requiring that "the device applications exist in a particular state." *Core Wireless*, 880 F.3d at 1362-63. All of those disclosures are directed to improving the device itself, with the result of improving an electronic device's user interface. As for *Data Engine*, the patent claims were directed to creating a "highly intuitive, user-friendly interface with familiar notebook tabs for navigating the three-dimensional worksheet environment." *Data Engine*, 906 F.3d at 1008. Those claims allowed computers to "provide rapid access to and processing of information in different spreadsheets, as well as easy navigation in three-dimensional spreadsheets." *Id.* This gave computers the functionality to "instantly access all parts of complex three-dimensional electronic spreadsheets." *Id.*

As discussed above, in the instant action, Adaptive has not plausibly alleged that Claim 11 of the '629 Patent provides a functional improvement to the actual technology underlying the method. Rather, Claim 11 provides a result-oriented method of collecting and organizing URLs, and presenting the corresponding web site pages in a slide show. Divorced from the technology itself, Claim 11 simply "improve[s] a user's experience" in navigating the World Wide Web. D.I. 22 at 12.

For these reasons, Adaptive has failed to plausibly allege that Claim 11 of the '629 Patent is directed to patent-eligible subject matter.

### 2. Claim 11 of the '629 Patent Lacks an Inventive Concept

Having determined that the '629 Patent is directed to an abstract idea, the Court next analyzes whether Adaptive has plausibly alleged that the limitations of Claim 11 of the '629 Patent recite an inventive concept under *Alice* step two, either individually or as an ordered combination. eBay contends that the '629 Patent is not inventive because it merely "appl[ies] the abstract idea to a computerized environment by reciting well-known, routine, and conventional computer functions performed by generic computer components." D.I. 21 at 12-13. In fact, eBay notes that the Asserted Patents admit that the purported inventions are achieved by "'combin[ing] the bookmark feature of web browsers with the slide show feature of presentation software'— techniques well known in the art." *Id.* at 3. Also, in eBay's view, components such as "web sites," "server," "list of URLs," "manual entry," "user interface," "query-based system," and "slide show format," are all conventional. *Id.* at 13. Moreover, eBay asserts that "the 'composer' and 'performer' components are generic pieces of software described at a high level of generality." *Id.*

Adaptive responds that Claim 11 of the '629 Patent includes "unconventional components (composer and performer) operating at unconventional locations (the server and not just the user's computer)." D.I. 22 at 18. Adaptive further points to the FAC, where Adaptive alleges that the

'629 Patent "embraced at least three inventive concepts at a high level: 1) rotation of Web pages in organized sequences; 2) sequences of Web pages that can be organized 'on the fly' – dynamically, at run time; and 3) use of a client-server architecture to deliver this experience seamlessly without client-side implementation." D.I. 18 ¶ 34.

The Court agrees with eBay and finds that the '629 Patent lacks an inventive concept, either individually or as an ordered combination, for the following reasons. *First*, Adaptive fails to plausibly allege in its FAC that any component of Claim 11 is inventive. Adaptive alleges that the composer and performer "operate[] in an unconventional location, namely the host server." *See id.* ¶¶ 36-37 (describing the host server as "unconventional"). Adaptive further alleges that the composer "operates differently than individual prior art websites that had fixed links that a user had to click on to navigate through the website," and that the performer "operates differently than prior art websites because it is remotely invoked to automatically locally display the created presentation on a user's computer absent human intervention." *See id.* ¶¶ 36-37; *see also* D.I. 22 at 13 (describing the composer and performer as unconventional components). Yet, even assuming that these individual components (and the location thereof) are unconventional, Adaptive has not plausibly alleged that they are inventive. The only "unconventional" qualities that Adaptive describes relate to the composer and performer's automation of manual processes. As the Court explained *supra*, a component is not inventive simply because it automates a manual process.

The '629 Patent and Adaptive's Opposition Brief further describe the composer and performer at such a high level of generality that the Court is unable to glean how those components are inventive. *See, e.g.,* '629 Patent at 9:19-20 ("Composer may be manually invoked by a site owner/developer to create a customized presentation of multiple web pages or may be automatically invoked by a query-based system."), 9:29-32 ("The performer is that portion of the

18

software of system that a user/visitor to the web utilizes to access and view the customized presentation."); D.I. 22 at 13 ("The composer creates a presentation of webpages by establishing a list of URLs, determining a display sequence of the URLs, and determining a duration of display for the URLs. . . . The performer, also operating on the host server, is then invoked to automatically locally display the created presentation on the user's computer."). Neither the '629 Patent's specification, nor Adaptive's Opposition Brief, offer any technical explanation as to how the composer and performer are actually programmed and implemented in the host server to create and display the desired slide show. Instead, the '629 Patent offers broad descriptions about invoking the composer and performer in order to create and present the customized slide show. These descriptions "merely execute the abstract idea," *Fraud Free Transactions LLC v. Ping Identity Corp.*, 780 F. Supp. 3d 460, 474 (D. Del. 2025), and are thus insufficient to render the '629 Patent inventive. *See id.* ("[V]ague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention."); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016) (finding that a claim was not inventive where "the specification limits its discussion of these components to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Absent a meaningful explanation of how these unconventional components are configured and/or used in an inventive way, the Court cannot accept Adaptive's conclusory assertions about the '629 Patent's inventiveness. *See Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (explaining that "the district court need not accept a patent owner's conclusory allegations of inventiveness" in a motion to dismiss).

*Second*, Adaptive's allegations that the '629 Patent offers an inventive technical solution fail. Again, Adaptive does not claim to have invented or improved the underlying technology that

19

allows for sequencing and displaying a slide show presentation. Rather, the '629 Patent creates and displays its slide show by combining computer components and functions. *See* '629 Patent at 8:67-9:2 (analogizing the invention to "combin[ing] the bookmark feature of web browsers with the slide show feature of presentation software"). The so-called inventive concepts which Adaptive alleges that the '629 Patent contains (i.e., the rotation of Web pages in organized sequences, the sequences of Web pages, and the client-server architecture to deliver this experience), D.I. 18 ¶ 34, amount to nothing more than the abstract idea of customizing access to web site pages to improve the user's experience. *See Rideshare Displays, Inc. Squires*, No. 2023-2033, 2025 WL 2751580, at *6 (Fed. Cir. Sep. 29, 2025) (finding no inventive concept where the claims were not "directed to an improvement to the . . . [technology] itself," but instead were "directed to improving a user's experience"). Also, with respect to the third allegedly inventive concept of a "client-server architecture to deliver this experience seamlessly without client-side implementation," D.I. 18 ¶ 34, none of the Asserted Claims recite this alleged limitation. Thus, no matter "how groundbreaking" the '629 Patent may be, Adaptive has not plausibly alleged that the '629 Patent supplies an inventive concept. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019).

*Third*, Adaptive does not allege in its FAC that the ordered combination of Claim 11 is inventive, nor do the parties discuss it in their briefings. Also, the Court is unconvinced that the ordered combination salvages the '629 Patent based on the FAC. According to the method recited in Claim 11 and described in the FAC, the "recited physical components behave exactly as expected according to their ordinary use." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). Indeed, Claim 11 recites a conventional ordering of steps—creating a presentation by establishing a list of URLs, determining the duration and

20

sequence of that list, then displaying the result in a slide show presentation—to achieve the desired result. *Id.* (finding no inventive concept where the patent used "conventional ordering of steps" with "conventional technology to achieve its desired result"). Such an ordered combination is not inventive.

For these reasons, Adaptive has not plausibly alleged that the '629 Patent recites an inventive concept, either individually or in an ordered combination. Given that the Court has found that the Asserted Patents are directed to ineligible subject matter and do not provide an inventive concept, and that Adaptive has already amended its complaint in this action once in response to eBay's original motion to dismiss, the Court finds that any further amendment would be futile. *See Talley v. Wetzel*, 15 F.4th 275, 286 n.6 (3d Cir. 2021) ("Amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted."). Thus, Adaptive's FAC will be dismissed with prejudice.

**C.    Claims 1 and 7 of the '707 Patent Are Not Directed to Patent-Eligible Subject Matter**

Even assuming, *arguendo*, that Claim 11 of the '629 Patent is not representative, the Court finds that Claims 1 and 7 of the '707 Patent are directed to patent-ineligible subject matter when analyzed separately.

**1.    Claims 1 and 7 of the '707 Patent Are Directed to an Abstract Idea**

Under *Alice* step one, the '707 Patent is directed to an abstract idea that resembles collecting, organizing, and sequentially displaying information. Adaptive explains that, "[i]n many respects, the '707 Patent is concerned with solving the same technological problems with the Web as the '629 Patent." D.I. 18 ¶ 46. Adaptive alleges only one minor distinction between the technological problems solved by the '629 Patent and the '707 Patent. That is, in the prior art to the '707 Patent, "a slideshow was composed manually and then stored in a file using standard

HTML format." D.I. 18 ¶ 46. The '707 Patent allowed for a website to be auto-composed via "automatic extraction of web page details from a desired web page." *Id.* In other words, where the '629 Patent concerns the creation and display of a slide show presentation more broadly, the '707 Patent specifically requires the web page details to be automatically extracted. Nevertheless, this distinction is immaterial to the question of patent eligibility. The '707 Patent's automatic extraction limitation is merely another example of automating a human inefficiency, which the court has already found to be an abstract idea. *Id.*; *see also Repifi*, No. 2021-1906, 2022 WL 794981, at *2 ("[T]he automation of [a] conventional human process to make it more efficient is itself an abstract idea."). The remaining limitations all recite a system (Claim 1) or method (Claim 7) that is nearly identical to the limitations present in Claim 11 of the '629 Patent. Thus, for the reasons recited *supra* with respect to the '629 Patent, and because the "automatic extraction" limitation does not solve a problem of computer functionality, the Court finds that the '707 Patent is directed to an abstract idea.

### 2.    Claims 1 and 7 of the '707 Patent Lack an Inventive Concept

The Court finds that the '707 Patent lacks an inventive concept, either individually or as an ordered combination, for the following reasons. *First*, Adaptive fails to plausibly allege in its FAC that any component of Claims 1 or 7 is inventive. In fact, Adaptive specifically notes that the '707 Patent solves many of the same technological problems as the '629 Patent. D.I. 18 ¶ 46. Unlike the '629 Patent, however, Adaptive alleges that the '707 Patent uses an "unconventional feature for auto-composing a website with automatic extraction of web page details from a desired web page." *Id.*; *see also id.* ¶ 47 ("[T]he Patent Examiner determined that it was unconventional to automatically compose a slideshow through the automatic extraction of web page details."). Even if automatic extraction is unconventional, Adaptive has not plausibly alleged that it is

inventive. As the Court explained *supra*, a component is not inventive simply because it automates a manual process.

Moreover, the '707 Patent offers no explanation as to how the extraction actually operates. The '707 Patent provides a vague description that "the composer is invoked and operates to extract the details" of the web page. '707 Patent at 8:15-16. It also describes three manners of extraction: (1) "by reviewing the user's desired web page and extracting all hyperlinks," (2) "by searching for a presentation/rendition text file that has been placed within the root directory of the web site," and (3) "through searching for a composer-recognizable meta tag within the web page." *Id.* at 8:19-37. Importantly, none of these descriptions actually explain *how* the extraction process itself works. Absent any technical explanation, the Court finds that the "unconventional" extraction described in the '707 Patent and FAC is not inventive.

*Second*, Adaptive's allegations that the '707 Patent offers an inventive technical solution fail for the same reasons as the '629 Patent. Adaptive's FAC does not identify any inventive concept in the '707 Patent that is unique from the '629 Patent. Nor could it, because the '707 Patent concerns the identical problem of improving "the way a user and/or developer of the World Wide Web presents and/or accesses a web site." D.I. 18 ¶ 46. Since the court has already found that the concepts Adaptive recites with respect to the '629 Patent are not inventive, the same is true with respect to the '707 Patent.

*Third*, Adaptive does not allege in its FAC that the ordered combination of Claims 1 and 7 of the '707 Patent is inventive, nor do the parties discuss it in their briefings. Also, the Court is unconvinced that the ordered combination salvages the '707 Patent based on the FAC. According to the system and method recited in Claim 1 and 7, respectively, the "recited physical components behave exactly as expected according to their ordinary use." *Two-Way Media Ltd.*, 874 F.3d at

23

1339. Claim 1 recites a system which predictably utilizes a "composer" which "composes a web slide show presentation" and a "performer" which "displays the presentation." '707 Patent at Claim 1, Claim 7. Claim 7 recites a conventional ordering of steps—creating a presentation by establishing a list of URLs using automatic extraction, and automatically displaying the resulting presentation—to achieve the desired result. *Two-Way Media Ltd.*, 874 F.3d at 1339 (finding no inventive concept where the patent used "conventional ordering of steps" with "conventional technology to achieve its desired result"). Such an ordered combination is not inventive.

## IV.    CONCLUSION

For all the foregoing reasons, eBay's Motion to Dismiss the '629 Patent and '707 Patent pursuant to 35 U.S.C. § 101 (D.I. 20) is **GRANTED**. Adaptive's FAC is dismissed with prejudice. The Court will issue an Order consistent with Memorandum Opinion.

24